Thank you, Your Honors. Excuse me. My name is Gary Logan, and I represent Mr. Zoggolis, the appellant. I believe this is a one-issue case, and that is whether or not the Nevada Gaming Control Board has exclusive jurisdiction over gambling debts that are evidenced by credit instruments or casino markers. Is there a picture of a marker in here? I understand what it means legally, but I'd just like to look at one and see all the wording. Let me see if I can find one. No, don't take your time. I just thought you might have one with a sticky on it in the excerpts. There's one in the excerpts of the record. Let me see if I can find it for you. Why don't you continue your argument and see on rebuttal if you can get us a reference. Yeah, don't use up your time here. Well, as I say, as I view it, it is a one-issue case, and the position that has been taken by the appellee in this case is just frankly wrong. Well, so the part that troubles me, Mr. Logan, about your argument is that you said unless the debt is evidenced by a credit instrument or a marker, and I'm not sure that the cases include that or marker part of it. Where are you getting the or marker language from? Where am I getting what, Your Honor? Or marker. Well, a marker is a credit instrument. Well, what case says that? I believe the NEMI case says that, Your Honor. That is a case that I argued here in the Ninth Circuit. It was filed, the decision was filed on January the 11th, 2001. Oh, you're the NEMI lawyer? Yes. And you won that one. Well, the NEMI, Your Honor, and they refer to credit instruments as gaming markers, and I think that's pretty commonly accepted parlance. Well, does the Nevada Gaming Control Board or the commission equate marker with a credit instrument? Yes. Okay. So where in the regulations can we look for a definition of credit instrument that includes marker? Hold on, Your Honor. I may have the statute. You can do it on rebuttal. I don't want you to take your time looking through your papers. Suffice it to say, the case law, both the Federal and the State law, use the terms interchangeably. I think you cited 463.368.1 for that, didn't you? Yes. NRS? Pardon me? NRS 463.681 or Code of Nevada, Nevada Administrative Code. No. It's the Nevada statute, Your Honor. Okay. All right. So that being the case, the law is clear that the Gaming Control Board has absolutely no jurisdiction to decide matters relating to markers. Well, I don't know that the law is clear. That's the thing that's really concerning me about this case. I think if a marker equals a credit instrument, you're right. But I'm not persuaded that the law clearly says that a credit instrument, that a marker is a credit instrument. And that's why I was asking you those questions, to see if the administrative code or the statutes define marker in that way. When I sit down, Your Honor, I'm going to find that, the answer to your question, in the Mimi case, because I think they refer to it and they use the term interchangeably. Let me ask you a slightly different question. This is a question of State law, really, isn't it? Yes. So why shouldn't we certify this to the Nevada Supreme Court and have them tell us what the answer is? Obviously, you're free to do that. Yes. I'm just asking what your reaction is for that. But I don't think it's necessary, because the issues involved in this case are complex issues involving contractual defenses and defenses under the UCC. And if you were to accept the argument that the Nevada Gaming Control Board has the right to decide these issues, what you would have is a hearing officer ruling upon very complex legal issues. Counsel, let me ask you if I understand your theory right. The theory is a marker is a credit instrument because Las Vegas Sands v. Mimi 529 says a marker is a gambling credit instrument. Then when you look at a marker, which I frankly have not done because I couldn't find a picture of one, it looks to me like it ought to be just like a countercheck.  The direction to my bank, First Federal Savings, pay to the order of Harrah's Casino, $250,000 or whatever it is. And then you look at this statute at 463.368, and it says a credit instrument may be enforced by legal process, and you imply from that that a defense to enforcement, a contract that it shall not be enforced, therefore may also be enforced by legal process rather than the Gaming Commission. Have I got the logic of your argument? Yes. The Gaming Commission and the Gaming Control Board take no part in the collection of gaming markers. I know that they do debts. For example, if the casino says you lost at poker and you didn't pay, the casino goes there. And if you say I won at slots and they didn't give me my jackpot winnings. Right. You go to the commission. You go to the Gaming Control Board, Your Honor. Board. Well, there's two bodies, the Gaming Control Board and the Gaming Commission. Oh, I didn't know that. Thanks. The Gaming Control Board is the police force basically that monitors the gaming industry. The commission is the body that awards licenses. And, of course, the commission has a type of appellate review of actions of the Gaming Control Board. I see. Now, there's a statute in here that says the title, I don't know, maybe it's a reg. I think it's a reg. 5.170 programs to address problem gambling. Yes, that's a regulation. Do you need that or is that just further, do you need any interpretation or is it just further emphasis of the proposition that a contract saying don't let me lose more than $250,000 is a valid contract with a casino? Well, you have the right to self-limit yourself. And that's what that regulation speaks to. That's what I mean. I mean, if I write a check for a million dollars but I have a contract that they won't enforce more than $250,000 of it, do I need this to say that that contract supersedes what it says on the check? Well, I think it is that regulation that gives rise to the contractual defense and to the UCC defense, to the enforcement of the marker. Am I right that there's never been a Nevada Supreme Court case that says these things? I think you would be correct in making that judgment. I will tell you that, in my opinion, the NEMI case is the most. That's a Ninth Circuit case. Yes. So we're bound by NEMI, but the Nevada Supreme Court isn't. Well, I think the Nevada Supreme Court will accept virtually everything that NEMI stands for because it's an extremely well-written opinion. And we've never seen anything like that from the Nevada Supreme Court. We'll give Judge Beyer your compliments. Pardon me? We'll give Judge Beyer your compliments. You're almost out of time. Can I ask you just one other question? Yes. The complaint alleges that a credit agreement was entered into. Yes. Right? And that markers were issued, but the complaint doesn't tie the credit agreement to any type of instrument. The markers were not memorialized in writing? I'm sorry. The markers were not memorialized in writing. Oh, yes. They're all memorialized in writing. Think of them as a check you're writing. Where are they in the record? Where are they in the record? Okay. Why don't you do that? Your time has expired, but why don't you find those record references and the statutory references that Judge Collins inquired about? Good morning, Your Honors. L.J. Simmons on behalf of Appellee Wynn Las Vegas. Your Honors. Counsel, I have some. Oh, go ahead with your first sentence, then I'll ask my question. If you have a question, I'm happy to answer it, Your Honor. I had trouble with each interpretation you offered me, and I thought maybe I'd lay them out for you so you could educate me and cure my troubles. First of all, on enforceability of gambling debts, 463.361 says they don't give rise to a civil cause of action if they're not evidenced by a credit instrument. But I know markers are a credit instrument. And if I had doubts, I'm bound by NME, which holds a marker is a gambling credit instrument. I think that's correct. And then I look at your next statute, and it says 463.368.1, a credit instrument may be enforced by legal process. Right. That means they don't go to the gaming control board, they go to court. That's correct. And so it seems like it's just any other common law action under UCC article 3 and 4. It does seem disjointed, Your Honor. And then I look at 5.170, and it says the licensee has to implement a program that allows a patron to be prohibited from access to the issuance of credit. That's correct. And then I look at the exclusive jurisdiction, and it looks like it's just exclusive jurisdiction to resolve gambling debts that are not evidenced by a credit instrument, like the ones I described to your colleague, where the casino says you lost at poker and you didn't pay. They can't sue in court. They have to go to the control board. Or the customer who says I won a jackpot at slots and you didn't pay. He can't go to court. He has to go to the control board. And this is an odd case procedurally in that you have a patron seeking affirmative relief outside of the gaming control board. Well, it's not that odd. I mean, the first thing that occurred to me is an insurance excess case where you have an assignment of rights and a covenant not to execute, so that the plaintiff suffers a judgment to be taken against him in excess of his insurance policy limits, and there's a contractual agreement, a covenant not to execute, that the winner of the judgment against him won't execute against him, just the insurance company standing in his shoes. I mean, we have these kind of contracts all the time. I understand, Your Honor. And with regard, and let me back up just a moment. Licensees, a casino itself or a licensee, has the ability under NRS 366, I'm sorry, 463-368 to go to court to enforce a credit instrument against a patron. That is a specific statute, and that's 463-368. The corresponding right is not given to the patron to go to court relating to that particular issue. How can that be? If according to our case law, a marker is a credit instrument, then why wouldn't the patron be able to have an action based on the credit instrument in court? Well, and again, it's an unusual situation here where you have a patron that goes into court prior to or in the absence of an action by a casino to enforce a marker. But that doesn't matter. If a marker is a credit instrument, then the law says that that's outside the exclusive jurisdiction of the Gaming Control Board. What's your response to that? The response is, based upon the statutory scheme set forth in the NRS, it is the licensee's right to go to court. When there is a dispute How could that be? I mean, if somebody you're saying that there'd never be a marker to a patron, but there could be some other kind of check. For example, if the patron advance paid $5,000 for his hotel bill and one night the room was uninhabitable, the hotel might give him a check for the one night he paid for and couldn't use the room. And I think your argument would imply that since there's no statute that gives a patron of a casino a right to sue on a check, he can't, and that check would be a worthless piece of paper. He'd have to go to the Gaming Control Board, except it has nothing to do with a gamble or something to do with a gambling loss because he probably gambled when he stayed at the casino. And I understand Your Honor's position. I think in that particular context that would fall outside of the gaming. Why? Because it doesn't involve gambling. Sure it does. He went to the casino to gamble. The only reason he's there. Well, with reference to a hotel bill, I, again, I don't see the relationship between a hotel bill necessarily and a check in that context. You're saying it doesn't involve a gaming transaction. That's correct, Your Honor. And in gaming transactions, we're bound by Chapter 463, and 463 specifically provides that. This fellow is not trying to enforce a gambling loss or gain either. Pardon me. I'm sorry. He's not trying to enforce a gambling loss or a gambling gain either. All he's trying to do is enforce a very traditional common law contract. Well, I don't think that's accurate, in all fairness. I think that the reliance upon, first of all, I don't think that's accurate. He didn't win the $250,000. He's not trying to enforce a gambling debt. You're correct in that regard, yes, Your Honor. But it is a gaming, it's related to a gaming transaction. That's exactly right. And in the context that Mr. Zagalos relies upon and our, well, the Gaming Regulation 5.170, I think it does fall within the realm of gaming. And in that context, the Patron's ability to dispute and resolve that dispute lies with the Gaming Control Board in this particular context. Counsel, do you take issue with opposing counsel's representation that a marker is a credit instrument? In all fairness, Your Honor, I don't believe there is a distinction between the two under Ninth Circuit law, under State law. I'm not aware of any distinction. And do you take issue with the representation in the complaint that a marker was, in fact, issued to the plaintiff? It is my understanding, our position is, yes, markers were issued. But again, I keep coming back to this issue as far as this Mr. Zagalos does not dispute that he took out the markers, Mr. Zagalos does not dispute that he signed the markers, Mr. Zagalos does not dispute the amount of the markers, Mr. Zagalos does not dispute that the markers were attempted to be deposited and returned. Do you dispute that he had a contract with the casino that they would not enforce markers beyond $250,000? Do I dispute his contention that he had a limitation? Yes, I dispute that. But why could why isn't that a legitimate issue to be litigated in court, then? But for your position that it's a one-way access to the court, is that the only impediment to him going to court? I think the answer is yes to that, that because this is a gaming dispute, we have to look to the applicable gaming statutes, and here's what the remedies are that they provide in that context. So let's assume that you had filed suit, and he raised this as an affirmative defense or a counterclaim. Do you believe that the court would have jurisdiction to adjudicate that? Yes, absolutely, Your Honor. Mr. Zagalos in no way is waiving any of his rights to assert affirmative defenses relating to an action by the licensee against Mr. Zagalos. It's a 12b-6, right? So we have to accept what he says in his pleading is true. That's correct, Your Honor. I think alternatively, there was some discussion in the underlying motion practice that identified this could as well be a 12b-1 motion for lack of subject matter jurisdictions. See, that's the odd thing, is that if you'd filed a suit in court, and he counterclaimed or raised an affirmative, if he counterclaimed, I guess your position would be what, that there's no jurisdiction for the counterclaim? It depends upon the specific counterclaim. I'm not disputing that Mr. Zagalos has a right to assert affirmative defenses, frankly, consistent with what he has asserted. Right. But it is a function of procedurally, there is no entitlement under the law for him to file that suit. He can go to gaming in this particular context. If Win Las Vegas or another casino initiates an action specifically against a patron, that patron has the ability to defend the action, as in all other cases. What about if criminal charges were brought? Would that be a defense against criminal charges, that he had signed this limitation? In all fairness, Your Honor, I don't know the answer to that. I mean, certainly in the criminal context, I think a patron has the right to assert whatever defenses he or she deems appropriate and available. That's a matter, unfortunately, for the criminal side, which we don't have any involvement in. I can tell you that Mr. Zagalos, there has been a criminal complaint issued against Mr. Zagalos relating to these particular markers. Is there any Nevada Supreme Court authority to support your position that the availability of access to the court is a one-way street? I don't believe the Nevada Supreme Court has specifically addressed that issue. And I know that the court opinions, both in the Ninth Circuit, the district court, and the supreme court opinions in Nevada have somewhat danced around that particular issue. For example, in the Nimi case, that was the Venetian, I believe, asserting a claim against the patron. So that issue wasn't addressed there. I think we have general common law and I think we have the statutory framework, which usurps the common law, to evaluate the ability of Mr. Zagalos to bring his claims in this particular case. I guess this would amount to a declaratory judgment action to establish that he doesn't owe more than $250,000, wouldn't it? I don't want to characterize what Mr. Zagalos' claims are or aren't. I know that he has asserted a breach of contract claim and a claim for recruitment. I think you could certainly conclude that it is, in a sense, a request for declaratory relief. Is there an event administrative code provision that addresses the accessibility or the exclusivity of the gaming control board action for a patron as opposed to a licensee? Not that I'm aware of, Your Honor. I think you have to go back to Gaming Regulation 5.170, which is applicable to this particular case. But it doesn't address the specific nuance that you're telling us applies. I think you're correct. No attorney general opinion? Not that I'm aware of, Your Honor. And I think, again, you go back to NRS 463-362, which gives the gaming control board the authorization to resolve disputes concerning winnings, losses, awards, how a game is played, all of those sorts of things. And in this particular context, as I've said before, an unusual context, I think Mr. Zagalos's remedy at this point in time is going to the gaming control board. Is there something that says he has the gaming control board has jurisdiction over it? I think it does. I think it's 463-362 relating to the jurisdiction of the gaming control board to address those issues. Do you have a position on certification? I don't, Your Honor. I don't. Any further questions? A technical one. It's really hard for me to read the credit agreement on page 20 of the excerpts. Is there a more legible copy in the excerpts? Probably not, Your Honor. Let me go to that page and let me see if I can assist. I don't want you to read the whole thing aloud or it will take too long. I just wanted to know what I asked. I understand, Your Honor, and I do recognize that it is difficult to read. If there's a particular question you have relating to it, I may be able to answer it. Thank you, counsel. Thank you very much. Your time has expired, but we'll give you two minutes. Well, just in terms of my questions, I think opposing counsel has conceded that a marker is a credit instrument, and his view is that the availability of access to the court works one way. So I'm just curious as to your response to that. Would you mind going to the microphone, because we do have audio recording? I think that position is absurd, and there's no authority for it, either Federal or State. Do you have an answer to Judge Kleinfeld's inquiry about the marker? Is that part of the record? Pardon me, Your Honor? Yes. I'm sorry, I didn't hear your question. The picture of the marker, is that in the excerpt? The marker is not in there, Your Honor. No, it is not. The credit agreement is in there, but the markers are not. There were several markers. They totaled $1,300,000, but unfortunately, there are none in the record. Okay. Would both of you be able to supplement the record with a legible copy of the credit agreement and a copy of at least one of the markers within by the end of the week? Yeah, I think that's possible. All right. Thank you. Why don't you do that? Okay. Just a second. Do you want one marker or do you want them all? I think they've conceded the amount. One of each should do. Okay. Very good. Do you have anything else? I think that letter that raised it from $150,000 to $250,000 or whatever it was, a letter or some other form or whatever it was, would also be good. All right. So three, if you don't mind amongst yourselves supplementing the record with those three items by the end of the week, that would be good. Very good. Thank you. I don't think any more needs to be said. I mean, if you have questions of me, I'd be more than happy to address them or answer them, I should say. But it's interesting to note that this argument that is being made here today was never raised in the Nene case. And believe me, excuse me, Mr. Adelson, who owns the Las Vegas Sands, has some of the best lawyers in the world. And they ---- Opposing counsel says it wasn't raised because it was not the same posture. It was the licensee who was initiating the action. In this case, it's the patron that's initiating the action. So there was no need to raise the issue in Nene. What's your response? And also, Mr. Semenza was not counsel in Nene, so. No, I understand that. I don't accept that argument at all, Your Honor. It makes no sense. And as I said earlier, excuse me. What they're asking of you is to issue an opinion that would permit a non-lawyer agent of the Nevada Gaming Control Board to decide these very complex legal issues. And that cannot be the law and cannot be the intent of the legislature and certainly should be struck down by this Court. Thank you, counsel. The case just will be submitted for decision.
judges: Kleinfeld, Thomas, Rawlinson